UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NAJIM KHAN,

Petitioner,

v.

TODD BLANCHE, ET AL.,

Respondent.

Case No. 2:26-cv-02629-TLF

ORDER GRANTING WRIT OF HABEAS CORPUS

Petitioner, Najim Khan, through counsel, filed this federal habeas corpus petition pursuant to 28 U.S.C. § 2241. Dkt. 6. Petitioner is currently detained at the Northwest ICE Processing Center (NWIPC). *Id.* The parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 4.

Petitioner argues that removal to Afghanistan or Jordan is not reasonably foreseeable, and therefore his continued detention is in violation of *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). *Id.* at 4.

Petitioner seeks (a) release; (b) an order preventing re-detention unless respondents establish by clear and convincing evidence at a hearing before a neutral decisionmaker that petitioner is a flight risk or a danger to the community, based on changed circumstances after their most recent release by ICE; (c) an order preventing removal to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; and (d)

an order barring removal to any third country where he is likely to face imprisonment or harm. *Id.* at 4. He also seeks an order that the respondents may not otherwise re-detain petitioner unless respondents provide travel documents, allow him an opportunity to voluntarily depart, and other additional procedures. *Id*. at 30.[1]

Respondents contend that U.S. Immigration and Customs Enforcement (ICE) are acting under lawful authority to detain petitioner under 8 U.S.C. § 1231(a)(6) while he awaits removal, and they assert that ICE is pursuing removal only to Jordan and Afghanistan. Dkt. 10 at 2. Respondents contend that "ICE has applied for travel documents," petitioner has not met his burden his detention is indefinite, and because he is detained "under a post-order scheme, his claims concerning the legality of his pre-order detention are moot." *Id*. They also argue his third country removal claims are not ripe and that petitioner's requested injunctive relief governing future re-detention imposes requirements that conflict with the governing statute. *Id*. at 8-10.

Having considered the petition, the briefing, and the record, the Court GRANTS the petition in part, because petitioner's continued detention violates due process. Prior to release, respondents must provide petitioner a hearing for the sole purpose of determining the appropriate conditions of his release. Immediately following this hearing, petitioner must be released. Alternatively, if respondents cannot provide a

[1]Petitioner's reply also has a heading that states, "THE COURT SHOULD GRANT PETITIONER'S HABEAS PETITION BY ORDERING HIM RELEASED ON BOND." Dkt. 14 at 3. This specific relief was raised for the first time on reply. Generally, the traverse "is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir. 1994); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Furthermore, the Supreme Court in *Arteaga-Martinez* held that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 573 (2022).

hearing within 24 hours, they must release petitioner under his most recent previous release conditions.

## BACKGROUND

Petitioner contends he is originally from Jordan (Dkt. 6 at 10), entered the United States without inspection on April 20, 2024 and was detained. *Id*. at 3. Respondents assert petitioner is a native and citizen of Afghanistan. Dkt. 11, Declaration of Deportation Officer Freite Subero (Subero Decl.) ¶ 3; Dkt, 12, Declaration of Katherine G. Collins (Collins Decl.) Ex. A (2024 I-213). Petitioner maintains that Afghanistan is his father's country of origin. Dkt. 6 at 4.

On April 21, 2024, petitioner was released from ICE custody on an Order of Release and Recognizance (OREC) with an immigration hearing scheduled for April 20, 2027. Dkt 11, Subero Decl., ¶ 5; Dkt 12, Collins Decl., Ex. C (OREC). He eventually obtained work authorization and applied for Temporary Protected Status (TPS). Dkt. 6 at 4; Dkt. 11, Subero Decl., ¶ 7.

Prior to the conclusion of his TPS proceedings[2], petitioner was arrested for Driving Under the Influence and Possession of a Controlled Substance; both charges remain pending. Dkt, 11, Subero Decl., ¶ 10; Dkt. 12, Collins Decl., Ex. F (2025 I-213).

On November 13, 2025, United States Border Patrol (USBP) arrested petitioner once he was released from the custody of Nez Perce County Jail, verbally notified him that his OREC had been canceled and that he was being arrested for violating the conditions of his release and lack of legal status in the United States, and transferred

[2] Respondents contend "After DHS terminated TPS for Afghanistan on or about July 22, 2025, USCIS terminated Petitioner's pending TPS application on July 30, 2025, before adjudication. Dkt. 11, Subero Decl., ¶¶ 8–9."

him to Kootenai County Jail to be temporarily housed pending custody determination. Dkt. 11, Subero Decl., ¶ 11; Dkt. 12, Collins Decl., Ex. F at 5.

Respondents allege that, on December 9, 2025, ERO served petitioner written notice of the cancellation of his OREC and conducted an informal interview, during which petitioner made no statements. Dkt. 11, Subero Decl., ¶ 13; Dkt. 12, Collins Decl., Ex. G (OREC Cancellation); Ex. H (Informal Interview form stating "no statement made" by petitioner). The record does not establish under which detention authority petitioner was being detained at the time of the interview or whether the interview was conducted in petitioner's native language, Arabic. Dkt. 12, Collin Decl., Ex. C (OREC stating the form was interpreted and explained in Arabic to petitioner).

On December 31, 2025, an immigration judge (IJ) ordered petitioner removed to either Afghanistan or Jordan. *Id.* at Ex. J (IJ Order).

Respondents state that, on or about February 24, 2026, ERO requested a travel document for petitioner from Afghanistan via the U.S. Mission Afghanistan in Doha, which was six months ago, two months after the final order of removal. Dkt. 11, Subero Decl., ¶ 15. Then, almost seven months after the issuance of the final order of removal, on July 8, 2026, ERO requested a travel document from the Jordanian Embassy. Dkt. 11, Subero Decl., ¶ 16. Respondents state, "ERO is presently awaiting replies from both Afghanistan and Jordan and is not attempting to remove Petitioner to a third country at this time." Dkt. 11, Subero Decl., ¶ 17.

## DISCUSSION

### A. Indefinite Detention

Petitioner argues he is indefinitely detained within the meaning of *Zadvydas v. Davis*, and he is entitled to release. 533 U.S. 678 (2001).

The parties agree petitioner is currently detained under 8 U.S.C. § 1231, which governs the detention and release of noncitizens who have been ordered removed (as opposed to noncitizens apprehended at the border under § 1225, or those not yet ordered removed, § 1226). Section 1231(a) provides that the Department of Homeland Security ("DHS") is required to detain a noncitizen during a 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, or to release them on supervision. 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

Here, petitioner asserts, and respondents do not dispute, that he has been held in detention, for purposes of the *Zadvydas* analysis, for over six months. Petitioner was taken into ICE custody on November 13, 2025. Dkt. 11, Subero Decl. ¶ 11; Dkt. 12, Collins Decl., Ex. F. An immigration judge subsequently ordered petitioner removed to either Afghanistan or Jordan on December 31, 2025. Dkt. 12, Collins Decl., Ex. J (IJ Order). On or about February 24, 2026, ERO requested a travel document for petitioner from Afghanistan via the U.S. Mission Afghanistan in Doha. Dkt. 11, Subero Decl., ¶ 15. Then on, almost seven months after the issuance of the order of removal, on July 8, 2026, ERO requested a travel document from the Jordanian Embassy. Dkt. 11, Subero Decl., ¶ 16. To date, no travel documents have been issued.

Petitioner has now been detained for more than nine months and has been subject to a final order of removal for eight months. Petitioner also cites to cases showing, since Afghanistan is embroiled in a civil war, several court opinions have found removal to Afghanistan to be not likely. *See, e.g.*, *Samir v. Wolf*, No. 1:25-CV-01397, 2025 WL 2845646, at *1 (W.D. La. Oct. 6, 2025); *Aghar v. Rokosky*, No. CV-26-03691-PHX-KML (CDB), 2026 WL 2286855, at *7 (D. Ariz. July 23, 2026), *report and recommendation adopted sub nom. Aghar v. Rokosky*, No. CV-26-03691-PHX-KML, 2026 WL 2284218 (D. Ariz. Aug. 7, 2026); *id.* at *9 (concluding that “[I]t is not plausible that Afghanistan will agree to accept Petitioner, *inter alia* because the United States does not have a repatriation treaty with Afghanistan.”).

At this stage, the burden shifts to respondents to provide evidence demonstrating a significant likelihood that petitioner will be removed in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Respondents have not met that burden.

Respondents do not rebut petitioner's assertion of how long he has been detained, nor do they provide any indication that there has been a pause or suspension in his detention between the filing of the habeas corpus petition and now.

The mere submission of travel-document requests, without evidence that either country has agreed to issue a travel document or that removal is scheduled or otherwise imminent, does not establish a significant likelihood of removal in the reasonably foreseeable future. *See Saadhom v. Bondi,* No. 2:26-cv-00425-TL, 2026 WL 698786, at *5 (W.D. Wash. Mar. 12, 2026) (rejecting assertions that the government "submitted travel document requests to Canada, Panama, and Costa Rica" where those requests were silent as to whether the government had received responses and provided no timeline or "specific date of anticipated removal").

Here, respondents likewise have not identified a response from Afghanistan or Jordan, much less a commitment by either country to accept petitioner, issuance of a travel document, a scheduled flight, or any specific date by which removal is expected to occur. *See* Dkt. 11, Subero Decl. ¶¶ 15–17. The record therefore does not establish a significant likelihood that petitioner will be removed in the reasonably foreseeable future.

Accordingly, under *Zadvydas*, petitioner is entitled to release.

**B. Respondents may not remove petitioner to a third country without notice and a meaningful opportunity to respond**

Petitioner asks the Court to order that respondents "may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. 6 at 30. He additionally asks the Court to enjoin respondents' ability

to "remove him to any country where he is likely to face imprisonment or other punishment upon arrival." *Id*.

"A plaintiff or petitioner 'seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Elshourbagy v. Bondi,* 817 F. Supp. 3d 1102, 115-16 (W.D. Wash. 2025) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

For the first requirement, "'[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Id.* (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

For the second requirement, "[w]ere Petitioner to be 'removed from the United States to the custody of a foreign sovereign' . . . the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely." *Id.* (quoting *AARP v. Trump*, 605 U.S. 91, 93 (2025)). The Court noted respondents' policies (such as the July 9, 2025, ICE Memorandum, which petitioner cites in the present case (Dkt. 6 at 19)), "fall far short of what court[s] in this District and Circuit have held that due process requires." *Id.* at 115.

For the third and fourth requirements, "the balance of equities tips steeply in [petitioner's] favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents" and "'it is always in the public interest

to prevent the violation of a party's constitutional rights.'" *Id.* at 116 (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).

Under these circumstances, the Court finds injunctive relief is appropriate regarding third country removal. Respondents shall not remove or seek to remove petitioner to a third country without notice and a meaningful opportunity to respond in conformity with due process.

**C. The Court otherwise denies petitioner's request for injunctive relief**

Petitioner also requests an order that the government may not re-detain him unless it (1) complies with regulations and due process protections concerning a future re-detention; (2) obtains a valid travel document to Jordan or Afghanistan for him; (3) provides the travel document to him and his counsel; and (4) offers him the opportunity to leave on his own within two months. Dkt. 6, habeas corpus petition, prayer for relief, at 29-30.

Respondents argue that petitioner's requested conditions on any future re-detention improperly interfere with the executive's immigration authority. Dkt. 10 at 2. Respondents rely on *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022), which recognizes that "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." (citation omitted).

The Court's habeas corpus jurisdiction is flexible and the Court has authority to provide relief consistent with due process, but the Court will not infer or predict that the

Due Process Clause will be violated by the defendants in the event of the additional future scenarios discussed in the prayer for relief.

The Court therefore DENIES these requests for injunctive relief.

**D. Punitive Policy Claim**

In the reply, petitioner states: "This Court should grant the habeas petition on the ground that the third-country removal program is punitive insofar as it involves imprisonment for a civil immigration issue…" Dkt. 14 at 11.

On the present record, the Court declines to make a broad ruling prohibiting petitioners' removal to any third country on the ground that the government's third-country removal program is unconstitutionally punitive in all applications.

The record does not contain sufficient evidence either that (1) removal to *any* third country would be punitive; or (2) that he faces a likelihood of removal to a country where he will be imprisoned upon arrival. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 732–34, 736–39 (W.D. Wash. 2025) (granting preliminary injunction prohibiting removal "to any country where [Petitioner] is likely to face imprisonment upon arrival" based on evidence demonstrating that petitioner was similarly situated to detainees who had faced imprisonment upon removal).

The relief granted in this order requiring notice and a meaningful opportunity to be heard will allow petitioner to challenge any proposed third-country removal where he can show a risk of imprisonment or other serious harm, and nothing in this order prevents him from pursuing additional relief.

**E. Petitioner is to be released within 24 hours of this Order**

The Court ORDERS petitioner shall be released within 24 hours. Because petitioner is now subject to a final order of removal, his release will be governed by the post-order detention framework rather than the OREC under which he was previously released.

Petitioner must be released without GPS monitoring; the Court adopts the reasoning in *Chicoze-Ezechi*, in which the court held that the placement of a GPS monitor is a live controversy and arbitrary placement of monitoring would violate Due Process:

> Petitioner was previously released without being placed on GPS monitoring. There is no evidence he poses either a risk to flee or a danger to the community. Thus, the imposition of GPS monitoring as a condition of release would be impermissibly arbitrary at this point. *See Palacio v. Hermosillo*, No. C25-1983-RSM-MLP, 2025 WL 4033287, at *3 (W.D. Wash. Dec. 22, 2025), report and recommendation adopted sub nom. *Quiva Palacio v. Wamsley*, No. C25-1983-RSM-MLP, 2026 WL 84930 (W.D. Wash. Jan. 12, 2026)…. A habeas petition continues to present a live controversy if after release, there remains collateral consequences which may be redressed by success on the petition. *Abdala v. I.N.S.*, 488 F.2d. 10161, 1064 (9th Cir. 2007).

*Chicoze-Ezechi v. Noem,* No. 2:26-CV-00145-BAT, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Petitioner's habeas petition

1) Respondents **SHALL** release petitioner **within 24 hours** of this Order.
    a. Petitioner shall be subject to appropriate conditions of release as determined by respondents.

b. Alternatively, if respondents do not impose newly established reasonable conditions of release within 24 hours, they must release petitioner under his most recent OREC release conditions.

2) Within two business days of petitioner's release, respondents must file a certification with this Court confirming the date and time petitioner was released from custody.

3) Petitioner **SHALL** be released without imposition of GPS monitor.

4) Respondents **ARE ORDERED TO NOT REMOVE AND NOT SEEK TO REMOVE PETITIONER** to a third country without notice and meaningful opportunity to be heard, in conformity with Due Process.

Dated this 20th day of August, 2026.

Theresa L. Fricke
United States Magistrate Judge